IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

NOV 2 7 2002

...ICHAEL N. MILBY, CLERK

| | | |
|---|---|---|
| CHARLES D. RABY, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | H-02-0349 |
| | § | |
| JANIE COCKRELL, Director, | § | |
| Texas Department of Criminal | § | |
| Justice-Institutional Division, | § | |
| | § | |
| Respondent. | § | |

<u>MEMORANDUM AND ORDER GRANTING SUMMARY JUDGMENT AND
DENYING WRIT OF HABEAS CORPUS</u>

Charles D. Raby has petitioned for a writ of habeas corpus, and Janie Cockrell has moved for summary judgment. The court is of the opinion that on Cockrell's motion for summary judgment Raby's petition for a writ of habeas corpus should be <u>DENIED</u>.

Background

Petitioner Charles D. Raby, currently in the custody of the Texas Department of Criminal Justice, filed this federal habeas corpus application. Because this is Raby's first application for federal relief, a brief history of the case is included.[1]

Raby was convicted of capital murder in June 1994, in the 248th District Court of Harris County, Texas, for the murder of Edna Franklin in October 1992. The indictment alleged that Raby

---

[1]     For convenience, the facts are adapted largely from the opinion of the Texas Court of Criminal Appeals affirming Raby's conviction and sentence. *See Raby v. State*, 970 S.W.2d 1 (Tex.Crim.App.1998) (en banc). Citations to the trial record will appear where this opinion elaborates on the Court of Criminal Appeals' recitation of the relevant facts.



murdered Franklin during the course of a robbery, sexual assault or burglary in her home. 27 Tr. at 8.[2]

Edna Mae Franklin, the 72 year old victim, lived with her two adult grandsons, who were Raby's friends. Although Franklin barred Raby from her home, her grandsons often snuck him through a window and allowed him to spend the night. On the night of Franklin's murder, the two grandsons left their grandmother at home and went out. On their return, one of them discovered Franklin dead on the living room floor. She had been severely beaten and repeatedly stabbed, and her throat was cut. She was undressed below the waist. The contents of her purse were emptied on her bedroom floor. Police concluded that the murderer's point of entry was the same window through which the grandsons had allowed Raby to enter the house. After further investigation, police arrested Raby for the offense, and he confessed to killing Franklin.

Before trial, Raby moved to suppress his confession. The police officers who questioned him testified to the informed and voluntary nature of the confession. Raby also testified at the suppression hearing. His version of events did not differ markedly from the police officers'. Raby testified that he saw the officers putting his then-girlfriend, Mary Gomez, and her baby into a car. He asked where the police were taking them and was told they were going home. *Id.* at 69.

He also testified that while driving to the police station, the police told him they could "get" Gomez for aiding Raby in the murder based on her failure to contact the police when she knew Raby's whereabouts after the murder. *Id.* at 70. Both the officer who drove Raby to the police station and the officer who interrogated him denied this. 26 Tr. at 91-92, 94-95. Raby said that he

---

[2]     "Tr." refers to the transcript of Raby's trial, including pretrial proceedings. The number appearing before "Tr." is to the volume number of the transcript. For example, "27 Tr. at 8" refers to volume 27 of the trial transcript at page 8.

believed the police took Gomez and the baby home. After arriving at the police station, however, he heard the baby crying and Gomez trying to soothe the baby. When he asked about her, the police told him she would be held for a little while in case they wanted to talk to her. He asked to talk to her, but testified that he was not permitted to at that time. He testified that the police did allow him to talk to Gomez after he gave his statement. 25 Tr. at 71-77. One of the officers testified that he did not even begin the interrogation until after Raby spoke to Gomez. 26 Tr. at 95-96. The police said nothing else to Raby about Gomez or the baby. 25 Tr. at 76-77.

On cross examination, Raby conceded that the police read him his warnings three times, that he understood the warnings, and that he knowingly and intelligently waived his rights. While Raby stated that he was concerned that Gomez might face charges, he admitted that the police never threatened that she would be charged if he did not sign the confession. He expressly said that he signed the confession voluntarily and because it was true. *Id.* at 74-83. The trial court denied Raby's motion to suppress his confession. 26 Tr. at 103.

At trial, Raby pleaded not guilty to the charge of capital murder. The testimony of several witnesses placed him near Franklin's house on the day of the murder, and one witness saw him with a knife. *See, e.g.*, 28 Tr. at 289-319. Sergeant Bill Stephens, one of the arresting officers, told the jury that he tried to serve the arrest warrant on Raby in at least three locations, including Gomez' home. When he arrived there, he learned that Raby fled moments earlier. 29 Tr. at 371. Gomez testified that Raby was at her home when he received a phone call from his mother informing him that the police were looking for him. He fled a few minutes before the police arrived. 28 Tr. at 325-26. The jury found Raby guilty of capital murder.

At the punishment phase, the state introduced evidence of a number of prior offenses and bad

acts. Witnesses testified to a series of assaults committed by Raby, with the victims including Raby's girlfriend, his stepfather, a ten year old boy, a two year old girl, a friend's mother, and others. Among the many assaults on his girlfriend, one occurred while she was pregnant with his child, and one occurred while she was holding the infant. While incarcerated, Raby reportedly attacked jailers and sheriff's deputies, fought with other inmates, and was found with weapons. Witnesses also testified about Raby's involvement in several convenience store robberies. Raby offered testimony at punishment related to his troubled childhood, including his mother's mental problems, his commitment to foster care and institutions, and episodes of physical and verbal abuse. Other witnesses testified that Raby had a peaceful disposition and that his problems during incarceration were provoked by jailers. The jury found that Raby presented a future danger and that the mitigating evidence did not justify a sentence of life imprisonment rather than death. As required by Texas statute, the trial court then sentenced Raby to death.

The Texas Court of Criminal Appeals affirmed Raby's conviction and sentence, *Raby v. State*, 970 S.W.2d 1 (Tex.Crim.App. 1998), and the United States Supreme Court denied certiorari, *Raby v. Texas*, 525 U.S. 1003 (1998). Raby then filed a state application for post conviction relief: it was denied by the Texas Court of Criminal Appeals on January 31, 2001. Raby filed this federal habeas corpus petition on January 30, 2002, and amended it on May 8, 2002.

Discussion

A.    <u>The Anti-Terrorism and Effective Death Penalty Act</u>

This federal petition for habeas relief is governed by the Anti-Terrorism and Effective

Death Penalty Act (AEDPA), which became effective April 24, 1996. *See Lindh v. Murphy*, 521

U.S. 320, 335-36 (1997). Under the AEDPA, federal habeas relief based upon claims that were

adjudicated on the merits by the state courts cannot be granted unless the state court's decision

(1) "was contrary to, or involved an unreasonable application of, clearly established federal law,"

or (2) "was based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding." 28 U.S.C. § 2254(d).

The "unreasonable application" standard permits federal habeas relief only if a state court

decision identifies the correct rule from Supreme Court case law but unreasonably applies the

rule to the facts before it or "if the state court either unreasonably extends a legal principle from

[Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to

extend that principle to a new context where it should apply." *Terry Williams v. Taylor*, 529 U.S.

362, 406 (2000).[3] In applying this standard, this court must determine (1) what was the decision

of the state courts and (2) whether there is any established federal law with which the state court

decision conflicts. *Hoover v. Johnson*, 193 F.3d 366, 368 (5th Cir. 1999). The state court's

factual determinations are presumed correct unless rebutted by "clear and convincing evidence."

---

[3]       On April 18, 2000, the Supreme Court issued two separate opinions, both originating
in Virginia, involving the AEDPA, and in which the petitioners had the same surname. *Terry
Williams v. Taylor*, 529 U.S. 362 (2000), involves § 2254(d)(1), and *Michael Williams v. Taylor*, 529
U.S. 420 (2000), involves § 2254(e)(2). To avoid confusion, this court will include the full name
of the petitioner when citing these two cases.

5

28 U.S.C. § 2254(e)(1).

B.    Procedural Default

When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal relief is generally barred on that claim. *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001).

> In all cases in which a state prisoner had defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

C.    The Standard for Summary Judgment in Habeas Corpus Cases

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000). Insofar as they are consistent with established habeas practice and procedure, the Federal Rules of Civil Procedure apply to habeas cases. *See* Rule 11 of the Rules Governing Section 2254 Cases. In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts in the case in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"). Where a state prisoner's factual allegations have been adversely resolved by express or implicit findings of the state courts and where the prisoner's evidence fails to demonstrate clearly and convincingly that the statutory presumption

of correctness has been rebutted, the facts of a case may not be resolved in the petitioner's favor. *See Marshall v. Lonberger*, 459 U.S. 422, 432 (1983); *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *May v. Collins*, 955 F.2d 299, 310 (5th Cir. 1991), *cert. denied*, 504 U.S. 901 (1992); *Emery v. Johnson*, 940 F.Supp. 1046, 1051 (S.D. Tex. 1996), *aff'd*, 139 F.3d 191 (5th Cir. 1997), *cert. denied*, 525 U.S. 969 (1998). Consequently, where facts have been determined by the Texas state courts, this court is bound by those findings.

1.     Ineffective Assistance of Counsel

Raby challenges his conviction and sentence on 13 separate grounds. First, he argues that he received ineffective assistance of counsel at trial and on appeal (Claims For Relief I, II, and III).

a.     Ineffective assistance of counsel at the suppression hearing

Raby claims that his counsel failed to develop and present a compelling case for suppression of his confession because: (1) counsel never learned that Raby was intoxicated and had no memory of entering the Franklin home or committing the crime; and (2) the statement consisted of Raby's answers to yes or no questions posed by the police. Raby also implies something sinister in the absence of audio or video tape of the statement, viewing this as evidence that the police have "something to hide." He also contends that his statement to the police was false, and that an investigation of his personality and psychological makeup would have revealed to counsel his susceptibility to making a false confession. Finally, Raby contends that he was coerced to confess by an implied threat to prosecute his girlfriend, Mary Gomez, for aiding and abetting the murder. Unfortunately for Raby, the obdurate reality and the facts do not coincide with his theories.

7

1.    <u>Exhaustion of State remedies.</u>

Raby failed to raise this claim either in his direct appeal or in his state habeas corpus petition. AEDPA requires that a prisoner exhaust his state remedies before raising a claim in federal court. A federal court cannot grant an application for a writ of habeas corpus on behalf of a person in state custody unless the applicant has exhausted the remedies available in the state courts, there is an absence of state corrective process, or circumstances exist that render such process ineffective to protect his rights. 28 U.S.C. § 2254(b)(1). The standard requires that petitioners advance in state court all grounds for relief, as well as factual allegations supporting those grounds. This rule extends to the evidence establishing the factual allegations themselves.

Ordinarily, a federal petition that contains unexhausted claims is dismissed without prejudice, allowing the petitioner to return to the state court to present these claims. *Rose v. Lundy*, 455 U.S. 509 (1982). That result in this case, however, would be futile because the unexhausted claims would be procedurally barred as an abuse of the writ under Texas law.

Texas prohibits successive writs challenging the same conviction except in narrow circumstances. Tex.CodeCrim.Proc.Ann. art. 11.071 § 5(a) (Vernon Supp. 2002). The Texas Court of Criminal Appeals will not consider the merits or grant relief on a later application unless it contains specific facts establishing: (1) the current claims have not been and could not have been presented earlier in an original application because the factual or legal basis for the claim was unavailable on the date of the previous application; or (2) by a preponderance of the evidence, but for a violation of the United States Constitution, no rational juror could have found the applicant guilty beyond a reasonable doubt. *Id.* The Texas Court of Criminal Appeals applies its abuse of the writ doctrine regularly and strictly. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir.) (per curiam),

*cert. denied*, 515 U.S. 1153 (1995).

Raby does not say that he could not have presented this claim in his direct appeal or his state petition because the factual basis for the claim did not exist. While his claim about the falsity of the confession may imply that he is actually innocent, that claim cannot stand in the face of his own testimony that his confession was both voluntary and true. Raby's unexhausted claim does not fit within the exceptions to the successive writ statute and would be procedurally defaulted in the Texas courts.

On review, a federal court may not consider a claim if the state court where he must present his claim to exhaust it would now find the unexhausted claims procedurally barred. That bar precludes this court from reviewing the claim unless he has shown (a) cause for the default and (b) actual prejudice attributable to the default; or alternatively, he has shown that this court's refusal to review the claim will result in a fundamental miscarriage of justice. A "miscarriage of justice" means either factual innocence of the crime for which he was convicted, or legal ineligibility for the death penalty. *Whitley v. Sawyer*, 505 U.S. 333, 335 (1992); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). To show actual innocence, Raby must show a fair probability that, in light of all the evidence, the jury would have entertained a reasonable doubt of his guilt. *Kuhlmann v. Wilson*, 477 U.S. 436, 455 n.17 (1986).

Raby claims that the ineffective assistance of appellate and postconviction counsel constitute cause for his default. Those claims of ineffective assistance of counsel are discussed later.

2.      Voluntariness of the Confession.

Raby's claim that his confession was false raises a claim of actual innocence. He contends

9

that his confession was coerced, involuntary and false, based on his claims that he was intoxicated

when he confessed, and he confessed only because he feared that his girlfriend, Mary Gomez,

would be charged with aiding and abetting his crime (Claim For Relief XII). At the suppression

hearing, however, Raby testified that the police told him that Gomez was being kept at the police

station "in case we need to talk to her for a little while," and that they said nothing else about her.

25 Tr. at 72. There was a dispute about whether Raby had an opportunity to talk to Gomez before

he gave his statement, but Raby admitted that the police said only that they wanted to talk to

Gomez, and made no threats about her, *id.* at 72-73. He also admitted on cross-examination that

the police read him his *Miranda* rights several times, that he understood those rights, and that he

voluntarily and intelligently waived them. *Id.* at 74. He also admitted that the police never

threatened to mistreat Gomez in any way, and that the sergeant conducting the interrogation never

threatened to file charges against Gomez. *Id.* at 78-79. Most significant, Raby specifically

testified that nobody ever told him that Gomez would be charged unless Raby confessed, and that

he confessed, in part, because the confession was true:

Q.   Sergeant Allen certainly didn't say, "You better sign this confession or I'll put her and the baby in jail"? I mean, he never did that?

A.   No.

Q.   So that's my point. In terms of you giving that confession, you were giving the confession because you wanted to come straight with Sergeant Allen?

A.   Yeah. And I wanted her to go home. The quicker I got that over with, the quicker she could get out of there, because I knew it was already going to tear her all up, and why get her even more mad at me?

*   *   *

Q.   And you're not telling the Judge that the only reason you signed the

confession was because you wanted to ger her out of there? You signed it because you did it voluntarily and because it's true, right?

A.   Because it's true and, you know - - well, he didn't force me to do it, but I wanted her to go home.

*Id.* at 81-83. While Raby expressed concern for Gomez, he testified in no uncertain terms that his confession was knowing and voluntary, and that it was true. His current claim that the confession was coerced and false cannot stand up in the face of his prior testimony. *See, e.g., Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002) (affidavit contradicting prior testimony could not create fact issue to defeat summary judgment absent a compelling explanation of the contradiction); *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (same), *cert. denied*, 531 U.S. 1073 (2001); *see also United States v. Coleman*, Nos. 89-10574, 89-10598, and 89-10599, 1990 WL 177243 at *3-*4 (9th Cir. Nov. 13, 1990) (rejecting argument that guilty plea was not knowing and voluntary where testimony that defendant was intoxicated contradicted defendant's earlier testimony), *cert. denied*, 499 U.S. 930 (1991); *Richardson v. Johnson*, 864 F.2d 1536, 1538-39 (11th Cir. 1989) (petitioner's testimony in habeas corpus proceeding that contradicts his trial testimony does not support relief), *cert. denied*, 490 U.S. 1114 (1989). Accordingly, there is no support for a contention that Raby is actually innocent of the murder of Edna Franklin. Raby's claim that he received ineffective assistance of counsel at the suppression hearing is, therefore, defaulted.

b.   Ineffective Assistance of Counsel at the Guilt-Innocence Phase

Raby contends that he received ineffective assistance of counsel at the guilt-innocence phase of his trial. This claim is also procedurally defaulted. Because Raby also asserts the alleged ineffectiveness of his trial counsel as cause for other procedural defaults, this claim will be reviewed on the merits.

11

First, Raby claims that his counsel "abandoned their advocacy role at the guilt-innocence phase of trial." He bases this assertion on counsel's decision not to make an opening statement, not to present any evidence, including rebuttal experts, and not to attempt to show that Raby's confession was involuntary and incredible. Additionally, he claims his counsel could have more effectively examined witnesses, presented evidence of alternative suspects, pointed out mischaracterizations of testimony by the prosecutor, presented a more effective closing argument, and objected more. Finally, he claims that counsel focused on irrelevant issues, particularly on whether Raby entered the house through the door or a window. Raby speculates that this focus was in pursuit of the legally-mistaken theory that entry through the door would preclude a finding of burglary because there would have been no breaking, only entry, into the house. If Raby's theory holds true, then his claim of ineffective assistance of counsel would fall within the scope of *United States v. Cronic*, 466 U.S. 648 (1984), and would excuse him from having to satisfy the prejudice test.

The voluntariness and credibility of Raby's confession have been discussed. Raby admitted under oath that his confession was knowing, voluntary, and true. Counsel were not deficient for choosing not to falsely argue that the confession was involuntary or untrue. *See, e.g., Nix v. Whiteside*, 475 U.S. 157, 187 (1986) (Blackmun, J., concurring) (petitioner "had no legitimate interest that conflicted with [his counsel]'s obligations not to suborn perjury"). In the same vein, counsel were not deficient for failing to present theories concerning alternative suspects when Raby admitted that he committed the crime.

The decision not to present any evidence, including experts to rebut the state's experts, was also a valid strategic decision. Counsel were faced with a defendant who confessed to murder. There was little they could do to convince the jury that Raby did not murder Franklin in the face of his own

confession and prosecution testimony placing him near Franklin's home with a knife at the approximate time of Franklin's death. Instead, counsel focused on challenging the evidence supporting the burglary that elevated Raby's intentional killing to capital murder. Counsel vigorously challenged, through cross-examination, the evidence of robbery and sexual assault, obtaining admissions that there was no physical evidence of sexual assault on Franklin's body, and that her room was frequently as messy as it was after she was murdered, thus challenging both the State's sexual assault and robbery theories. *See, e.g.*, 27 Tr. at 57-59, 137-38, 167-68. Counsel also attempted to establish that Raby had the consent of Franklin's grandsons to enter the house, *id.* at 129-32, and attacked the credibility of prosecution witnesses, *id.* at 169-71.

> [W]hen counsel fails to oppose the prosecution's case at specific points or concedes certain elements of a case to focus on others, he has made a tactical decision. [*Bell v. Cone*, ___ U.S. ___, 122 S.Ct. 1843,] 1851-52 [(2002)]. By making such choices, defense counsel has not abandoned his or her client by entirely failing to challenge the prosecution's case. S uch s trategic decisions d o n ot r esult i n a n a bandonment o f counsel . . . .

*Haynes v. Cain*, 298 F.3d 375, 381 (5th Cir. 2002) (en banc). Thus, counsel's decision, in the face of Raby's confession, to focus on the elements separating non-capital from capital murder did not constitute abandonment of their role and the *Strickland* test which was applied by the Texas Court of Criminal Appeals, *see* SHTr. at 229-31, not the *Cronic* test urged by Raby, governs this claim.

Having established that the state court applied the correct standard, the sole remaining question under AEDPA is whether it did so reasonably. Assuming that counsel rendered deficient performance, Raby still cannot demonstrate prejudice. He confessed to killing Franklin, thus establishing both his entry into the house and that he killed the victim. There was also substantial evidence supporting a jury finding of both robbery and sexual assault. While Raby, with the benefit of hindsight, offers a list

of things he believes counsel could have done differently or more effectively, an objective review of counsel's performance reveals that counsel provided reasonably effective assistance given the hand they were dealt. "Judicial scrutiny of a counsel's performance must be highly deferential [and] every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S., at 689. Thus, Raby cannot "show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Id.* at 694, and the state court's analysis was reasonable.

c.    <u>Ineffective Assistance of Counsel at Punishment Phase</u>

Raby also contends that he received ineffective assistance of counsel at the punishment phase of his trial because: (1) counsel failed to present an adequate case against future dangerousness and presented an expert witness who harmed Raby's case; (2) counsel failed to present adequate mitigating evidence; (3) counsel failed to impeach one of the state's witnesses; (4) counsel's closing argument was weak; and (5) counsel's overall performance was inadequate. None of these claims was presented to the Texas courts. Accordingly, they are unexhausted and procedurally defaulted. Unlike Raby's ineffective assistance of counsel claims about the suppression hearing and the guilt-innocence phase of his trial, the assistance of counsel at the punishment phase is not used as the predicate for other procedural defaults, nor does it raise an issue of actual innocence. The state procedural default bars this court from addressing the merits of Raby's claim.

d.    <u>Ineffective Assistance of Appellate Counsel</u>

Raby contends that his appellate counsel was ineffective because he had a conflict of interest and failed to raise five specifically identified claims of trial error and "any other claim that this court

concludes was procedurally defaulted." In a related claim, Raby argues that the Texas post-conviction process is actually an additional layer of direct appeal, that the process is inadequate to protect his rights, and that he was forced to use incompetent postconviction counsel.

1.  Direct Appeal

A defendant is constitutionally entitled to effective assistance of counsel in his first appeal as of right under state law. *Evitts v. Lucy*, 469 U.S. 387, 394-95 (1985). Generally, to prevail on a claim for ineffective counsel, a petitioner

> must show that . . . counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Smith v. Robbins*, 528 U.S. 259 (2000) (this standard applies to claims about appellate counsel). First, Raby must demonstrate that counsel's representation fell below an objective standard of reasonableness. Reasonableness is measured against prevailing professional norms, and it must be viewed under the circumstances. Review of counsel's performance is deferential. *Id.* at 687-89.

With the exception of Raby's claim that the prosecutor commented on his silence, all of the specific claims Raby alleges should have been raised on direct appeal were raised in his state post-conviction proceeding. While the State habeas court denied some of these on procedural grounds, it also addressed all of them on the merits, and found all of them lacking in merit. SHTr. at 221-31. These findings and conclusions were adopted by the Texas Court of Criminal Appeals. *Ex Parte Raby*, No. 48,131-01 (Tex.Crim.App. Jan. 31, 2001).

The issue of the prosecutor's comment is without merit. Because the Court of Criminal Appeals, *i.e.*, the same court that heard Raby's direct appeal, found most of these claims meritless, and this court finds the remaining claim meritless, it necessarily follows both that counsel was not deficient for failing to raise meritless claims and that Raby suffered no prejudice as a result of a failure to raise these meritless claims.

To the extent that Raby bases this claim on appellate counsel's failure to raise other claims that are now procedurally defaulted, it is equally unavailing. Appellate counsel is not required to raise every possible non-frivolous claim on appeal. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Appellate counsel raised 16 points of error in the direct appeal -- nine of these are raised again in this petition. Of the other specific claims identified by Raby, all but one were later raised and rejected in his state habeas corpus petition. Raby had a right to competent, not perfect, counsel on appeal. His appellate counsel raised numerous nonfrivolous issues, and nothing in the record suggests that his failure to raise other issues was based on anything other than a professional judgment to focus on what counsel believed were the strongest issues available to him. Raby received effective assistance of appellate counsel.

### 2. Conflict of Interest

The conflict of interest arises from the fact that Raby's appellate counsel was Michael Fosher who served as second chair counsel at Raby's trial. Raby claims that Fosher had a conflict of interest because he would be disinclined to argue that he, himself, rendered ineffective assistance at trial.

Raby misconstrues "conflict of interest." A conflict of interest arises in situations in which the

16

attorney has a specific interest contrary to that of his client. For example, an attorney would have a conflict of interest where he represents a party suing a company in which the attorney owns a financial interest. The type of "conflict" identified by Raby is not a conflict of interest at all, but is the kind of situation attorneys routinely litigate. For example, attorneys often draft contracts and subsequently argue that those same contracts should not be enforced due to some defect in the contract.

Even assuming that Raby has identified an actual conflict of interest, he is not entitled to relief. The issue of "an attorney's conflict of interest that springs . . . from a conflict between the attorney's personal interest and that of his client" is governed by the *Strickland* standard. *Beets v. Scott*, 65 F.3d 1258, 1260 (5th Cir. 1995) (en banc), *cert. denied*, 517 U.S. 1157 (1996). The ineffective assistance of trial counsel claim was eventually raised in Raby's state habeas corpus petition, where it was rejected by the Texas Court of Criminal Appeals. Raby therefore suffered no prejudice from appellate counsel's failure to raise the issue on direct appeal.

### 3. Raby's State Post-Conviction Proceeding

Raby also claims, under numerous theories, that the Texas post-conviction procedure is inadequate to address defects in his trial and sentencing proceeding. Specifically, he contends that: (1) he was required to present many of his claims in his post-conviction proceeding; (2) he was forced to accept representation by an attorney who was incompetent and failed to present and preserve numerous issues for review; (3) the state postconviction process was so inadequate as to deny him his rights under the due process clause; (4) the Texas Court of Criminal Appeals failed to follow Texas state law, thus denying Raby a State-created liberty interest without due process of law; and (5) the process was so ineffective as to deny him access to the courts. He also argues that the State post-conviction proceeding is, in fact, simply another layer of direct criminal appeal and not a civil post-

conviction proceeding. He bases this last point on nothing more than the facts that jurisdiction over state post-conviction proceedings rests in the Texas Court of Criminal Appeals, and the rules governing such proceedings are part of the Texas code of criminal procedure.

None of the authority cited by Raby supports the proposition that he was required to raise his claims in his State habeas corpus petition rather than on direct appeal. To the contrary, clearly-established Texas law holds that the habeas corpus proceeding is more limited in scope than the direct appeal. *See Ex Parte Graves*, 70 S.W.3d 103, 109 (Tex.Crim.App. 2002) (post-conviction proceedings limited to review of jurisdictional defects or denials of fundamental or constitutional rights). As a practical matter, the only claim Raby could have raised in his State habeas petition that he could not have raised on direct appeal was his claim, rejected above, that he received ineffective assistance of counsel on appeal.

Second, habeas corpus proceedings are civil in nature, not another layer of direct criminal appeal. "Postconviction relief is . . . not part of the criminal proceeding itself, and it is in fact considered to be civil in nature." *Finley v. Pennsylvania*, 481 U.S. 551, 556-57 (1987) (citing *Fay v. Noia*, 372 U.S. 391, 423-24 (1963)).[4] It is well-established that there is no constitutional right to counsel in a post-conviction proceeding. "States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." *Id.* at 557 (citation omitted). For this reason, Raby has no right to effective assistance of postconviction counsel, *id.* at 557-58, and ineffective assistance of

---

[4]        Even if Raby's theory that the Texas postconviction process was another layer of direct appeal was correct, it would provide no basis for relief. *Evitts v. Lucey*, 469 U.S. 387, 393-94 (1985) held that there is a constitutional right to effective assistance of counsel on a *first* appeal as of right. Raby's first appeal was his direct appeal to the Texas Court of Criminal Appeals.

postconviction counsel cannot constitute cause for a procedural default.

> There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings . . . [Petitioner] must bear the risk of attorney error that results in a procedural default.

*Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991) (citations and internal quotation marks omitted); *see also Martinez v. Johnson*, 255 F.3d 229, 241 (5th Cir. 2001) ("ineffective assistance of habeas counsel cannot provide cause for a procedural default"), *cert. denied sub nom. Martinez v. Cockrell*, 534 U.S. 1163 (2002).

Finally, substantially all of Raby's various theories concerning the State postconviction proceeding are foreclosed by *Ogan v. Cockrell*, 297 F.3d 349 (5th Cir. 2002). Ogan, like Raby, argued that the Texas habeas court's appointment of purportedly incompetent habeas counsel violated Texas statutory law, deprived him of meaningful access to the courts, and violated his rights to equal protection and due process of law. Noting that "[t]his Court has repeatedly held . . . that there is no constitutional right to competent habeas counsel,"*id.* at 357, *Ogan* rejected all of these theories. Moreover, failure to provide competent habeas counsel "does not fall under the general catch-all exception provided in 28 U.S.C. § 2254(b)(1)(B)(ii)." *Martinez*, 255 F.3d at 238 n.10. "28 U.S.C. § 2254(i) bars a federal habeas claim solely grounded in 'the ineffectiveness or incompetence of counsel during . . . State collateral post-conviction proceedings.'" *Martinez*, 255 F.3d at 245 (quoting 28 U.S.C. § 2254 (i)). Accordingly, Raby's various claims arising out of the purportedly deficient performance of his state habeas counsel provide neither independent grounds for relief, nor cause for any procedural default.

2.     Sufficiency of the Evidence.

Raby contends that the evidence was insufficient to support the jury's finding of the predicate felonies of robbery and sexual assault used to elevate the murder to capital murder. (Claim For Relief VI). The state court found this claim procedurally barred. Because the insufficiency of the evidence could give rise to a claim that Raby is legally ineligible for the death penalty, this claim will be reviewed on the merits.

In addressing the sufficiency of the evidence, the "question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis original). This court must determine whether a rational person would conclude from the data in evidence – beyond a reasonable doubt – that Raby killed Franklin in the course of committing or attempting to commit burglary, aggravated sexual assault, or robbery.

The state court found that:

> At the guilt-innocence phase, the state elicited evidence that [Raby] confessed to committing the instant offense; that [Edna Franklin] had barred [Raby] from her home; that [Franklin's] grandson was away from [Franklin's] house from 4:00 p.m. until 10:00 p.m.; that [Franklin] always locked the doors in her home when she was alone; that, when [Franklin's] grandson discovered [her], the front and back doors of [Franklin's] home were open; that [Franklin] was discovered dead on her living room floor; that [Franklin] had sustained bruises to her scalp, ear, and sternum caused by blunt force, two large cutting wounds to her neck, five stab wounds to the chest, and 11 fractured ribs; that the stab wounds were consistent with the blade of a pocketknife; that Franklin was nude below the waist; that the condition of [Franklin's] body was consistent with a person who had been sexually assaulted; that [Franklin's] blue jeans were turned inside out and off her body; that [Franklin's] panties were ripped and discarded; that [Franklin's] purse was on her bedroom floor with credit cards, bills, and her checkbook strewn about; that the attacker entered the house through a window; that [Raby] was seen earlier on the day of the instant offense cleaning his nails with a pocketknife; and, that a white man with a build and height consistent with that of [Raby] was seen in the vicinity of [Franklin's] house at approximately 8:00 p.m. on the

20

evening of the instant offense.

SHTr. at 222-23 (citations omitted). Based on this evidence, the state court found that the evidence supported the jury's findings. Federal relief is available under only if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

This evidence, viewed independently by a federal court in the light favorable to the prosecution, was nearly compelling in showing that Franklin was killed during the commission or attempted commission of a robbery or sexual assault. While there was no direct evidence of a sexual assault, there was substantial circumstantial evidence including her state of undress, the condition of her clothing, and the position of her body. While Raby postulates that the evidence was equally consistent with Franklin undressing for bed as it is with sexual assault, this theory ignores that she: (1) was not fully undressed, but was undressed only below the waist; (2) was not in her bedroom (where one would expect to find her if she was in the process of undressing for bed), but in the living room; and (3) her pants and her underwear were found near her body (in the living room) with the pants turned inside out and the underwear torn. Circumstantial evidence supported robbery, including the state of the contents of Franklin's purse. Franklin may have been messy, but she was not shown to have ordinarily done any of the things used to support rape and robbery.

Raby also contends that there was insufficient evidence that he even entered the premises or did so unlawfully. He argues that the only evidence that he even entered the premises was his confession, but naturally that does establish his entry into the house.

He also argues that there was no proof that he entered the house illegally because Franklin's grandsons had admitted him to the house on earlier occasions. It is undisputed, however, that the

grandsons were not present at the time of the murder, and had not admitted Raby to the house on that day. Raby's implicit proposition that a person who is lawfully admitted onto private property on one or many occasions has permission to enter of his own accord on any occasion is unsupported. In sum, the state habeas court's finding that there was sufficient evidence to support a finding of every element of robbery, aggravated sexual assault, or attempted robbery or sexual assault was reasonable.

### 3. Intoxication Defense

Raby next contends that his conviction was obtained in violation of the Constitution because he was not permitted to inform the jury that extreme intoxication could negate the specific intent necessary to a finding of capital murder (Claim For Relief IV). Statutes barring the defense of voluntary intoxication do not violate the Constitution. *Montana v. Egelhoff*, 518 U.S. 37 (1996). Raby challenges the logic of *Egelhoff* because it was not a capital case. That distinction has, however, already been rejected. *Goodwin v. Johnson*, 132 F.3d 162, 190-91 (5th Cir. 1998) (holding that Texas statute barring defense of voluntary intoxication to negate specific intent element of capital murder does not violate due process clause). Accordingly, Raby's claim is without merit.

### 4. Argument About Mitigating Evidence.

Raby claims that the trial court barred him from arguing to the jury during the punishment phase that it should consider evidence of his intoxication as mitigating evidence (Claim For Relief V).

In *Lockett v. Ohio*, 438 U.S. 586 (1978), a plurality of the Supreme Court held "that the Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record . . . as a basis for a sentence less than death." 438 U.S. at 604 (emphasis in original). This holding is based on the plurality's conclusion that death "is so profoundly different from all other penalties" as to render "an individualized decision

22

. . . essential in capital cases." *Id.* at 605.

Raby moved seeking two separate rulings before the jury charge at the punishment phase: First, Raby asked the trial court to instruct the jury that it must consider evidence of his intoxication as mitigating; and second, he asked to argue to the jury that evidence of intoxication was mitigating. There is some ambiguity whether he wanted to argue that the jury *must* consider such evidence mitigating or merely that it *could* so consider the evidence. It is clear, however, that the trial court barred him only from arguing that the jury *must* so consider the evidence.

> Mr. Fosher [defense counsel]: My understanding is that we're allowed to argue something about intoxication, but there is no type of instruction in the charge regarding- -
>
> The Court: Well, I just told you that you can't tell them that they have to. They're not instructed. It's not in the instructions. If it's raised by the evidence, I suppose anything in the record you can argue, and I gave you guidelines as set out by the Court of Criminal Appeals. So I don't know what you're going to say. I'm probably going to have to rule on it if there's an objection.

37 Tr. at 988.

In Raby's direct appeal, the Texas Court of Criminal Appeals held that there is no constitutional requirement that a capital sentencing jury give particular weight to any mitigating evidence, but only that they have an opportunity to consider and give effect to mitigating evidence. *Raby v. State*, 970 S.W.2d 1, 6 (Tex.Crim.App. 1998). Accordingly, that court found that the trial court's ruling was correct. Raby now claims that the Court of Criminal Appeals misunderstood his claim of error, and ruled instead on the trial court's denial of his requested instruction that the jury *must* give weight to his mitigating evidence.

Assuming that Raby is correct and the Court of Criminal Appeals did misunderstand his argument, he still is not entitled to relief. As the portion of the record quoted above demonstrates, the

trial court did not prevent Raby from arguing from the record that he was intoxicated and that the jury could consider this in mitigation of punishment. The trial court ruled instead that Raby could argue from the record but could not argue that the jury *must* give mitigating weight to this evidence. "If it's raised by the evidence, I suppose anything in the record you can argue . . . ."

5. Constitutionality of Capital Murder

Raby next contends that his conviction for capital murder is unconstitutional because the jury was permitted to base the conviction on a finding of burglary in which the murder served as the predicate felony (Claim For Relief VII). The Texas capital murder statute defines capital murder as a murder committed "in the course of committing or attempting to commit . . . burglary." Tex. Penal Code § 19.03(a)(2). Raby claims that the statute does not give fair notice that the murder itself may serve as the predicate felony for burglary because the murder does not occur until after the burglary, *i.e.*, the unauthorized entry onto the premises with the intent to commit a felony, is complete. Raby claims that this "burglary by murder" statute is unconstitutional because it turns into capital murder any murder committed inside a building or habitation in which the murderer was not authorized to enter, and therefore fails to meaningfully narrow the class of death-eligible defendants. He also claims that the statute fails to give fair notice that the murder itself can serve as the predicate felony for burglary.

a.     Fair Notice.

Due process requires that the law give fair notice of what conduct is prohibited. "[T]he Due Process clause prohibits 'an unforeseeable and retroactive judicial expansion of narrow and precise statutory language.'" *Beets v. Johnson*, 180 F.3d 190, 193 (5th Cir. 1999) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964)), *cert. denied*, 528 U.S. 1121 (2000). Raby complains both that the language of the capital murder statute is ambiguous, and that no Texas case law held that language to encompass "burglary by murder" until after Raby murdered Franklin.

Contrary to Raby's argument, the Texas Court of Criminal Appeals held at least three times before his crime that murder itself can serve as the predicate felony for a burglary used to elevate murder to capital murder. "[A]n unlawful entry into a habitation with the intent to commit murder will satisfy the burglary element of a capital murder charge." *Boyd v. State*, 811 S.W.2d 105, 114 (Tex.Crim.App), *cert. denied*, 502 U.S. 971 (1991); *see also Beathard v. State,* 767 S.W.2d 423, 427 (Tex.Crim.App. 1989) (holding that unauthorized entry onto premises with intent to commit murder establishes burglary element of capital murder); *Fearance v. State*, 771 S.W.2d 486, 402-94 (Tex.Crim.App. 1988) (rejecting argument that "the jury did not have to find an underlying felony to aggravate the intentional murder to capital murder"), *cert. denied*, 492 U.S. 927 (1989). Thus, the Texas Court of Criminal Appeals provided unequivocal notice that "burglary by murder" could elevate an intentional killing to capital murder years before Raby murdered Franklin. Raby had fair notice.

b.     Failure to Narrow the Class of Defendants.

A capital sentencing scheme must meaningfully narrow the class of death-eligible defendants. *See, e.g., Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988). Raby, theorizing that "burglary by murder" turns any murder committed in a building or habitation that the killer was not authorized to enter into

capital murder, argues that the Texas capital murder statute fails to so narrow the class of defendants.

While it does not appear that this specific claim has been addressed by federal courts, courts have repeatedly upheld the facial constitutionality of the Texas capital sentencing scheme against charges that it fails to meaningfully narrow the class of death-eligible defendants. *See, e.g., Jurek v. Texas*, 428 U.S. 262, 268-71 (1976); *West v. Johnson*, 92 F.3d 1385, 1406 (5th Cir. 1996). Moreover, Raby's conclusion simply does not follow from his premise. Supreme Court precedent requires that a capital sentencing scheme narrow the class of death-eligible defendants. In other words, a state may not simply declare a mandatory death sentence for all murderers, *see, e.g., Woodson v. North Carolina*, 428 U.S. 280 (1976) but must instead draw some rational distinction between those convicted murderers who are sentenced to death and those who are not. The "felony by murder" statute satisfies that requirement. By recognizing the sanctity of private premises, and acting to protect individuals from harm by unwelcome intruders when they are on such premises, the Texas legislature has identified a separate category of murder which it deems distinct, and more deserving of death, than other categories of murder. Not all murders are committed during the course of a burglary by murder, and Raby presents no evidence that a substantial percentage of capital murder charges in Texas are based on this theory.

In any event, even if Raby's theory concerning this underlying felony were correct, it would provide no basis for relief in this case. There was ample evidence to support a jury finding of two other felonies supporting the burglary charge; aggravated sexual assault, and robbery. Thus, regardless of whether the "burglary by murder" provision of the Texas capital sentencing scheme narrows the class of death eligible defendants, there was sufficient evidence to support a finding of burglary based

on two other underlying felonies.

      6.     Jury Unanimity.

Raby next contends that his conviction for capital murder was unconstitutional because the jury was not required to unanimously agree on the felony underlying the burglary (Claim For Relief VIII). Raby raised this claim in his state habeas corpus petition. The Texas habeas court rejected the claim as procedurally barred because Raby did not object to the jury charge at trial, and as meritless. SHTr. at 223-24, 227-28. As discussed above, Raby did not receive ineffective assistance of counsel at trial, and has neither demonstrated cause for his defaults nor actual innocence. Accordingly, this claim is defaulted.

      7.     Prosecutorial Comment on Raby's Silence.

In his closing argument, the prosecutor commented on Raby's pre and post-arrest silence, stating: "[I]s it any wonder that when he runs, that he is silent after he runs? . . . Is it any wonder that that type of coward would not fess up to all the details of his statement to the police? Of course not." 30 Tr. at 462-63. Raby claims that this violated his Fifth Amendment right against compelled self-incrimination (Claim For Relief IX). Raby, however, never presented this claim to the Texas state courts.

Raby has not demonstrated cause for his failure to present the claim to the Texas courts or actual innocence. This court may not address the claim on the merits.

      8.     Informing the Jury About Parole Eligibility.

Raby was sentenced to death based in part on a finding that he presented a future danger to society. He asserts that his sentence is unconstitutional because he was not permitted to question the jury during voir dire or otherwise inform the jury that, if sentenced to life imprisonment, he would be

ineligible for parole for at least 35 years (Claim For Relief X). This claim is clearly foreclosed.

Raby primarily relies on *Simmons v. South Carolina*, 512 U.S. 154 (1994). At the time of Simmons' conviction, South Carolina allowed for a sentence of life in prison without the possibility of parole upon conviction of a capital offense. In *Simmons*, the defense sought an instruction informing the jury that life imprisonment would carry no possibility of parole, but the trial court refused. The Supreme Court held that when "the alternative sentence to death is life without parole . . . due process plainly requires that [the defendant] be allowed to bring [parole ineligibility] to the jury's attention by way of argument by defense counsel or an instruction from the court." *Simmons*, 512 U.S. at 169 (citing *Gardner v. Florida*, 430 U.S. 349, 362 (1977)).

The *Simmons* court reasoned that when a state imposes the death penalty on the premise that the convicted individual poses a danger to society, the fact that the defendant may receive life without possibility of parole "will necessarily undercut the State's argument regarding the threat the defendant poses to society." *Simmons*, 512 U.S. at 169. To hold otherwise would create a "false dilemma by advancing generalized argument regarding the defendant's future dangerousness while, at the same time, preventing the jury from learning that the defendant will never be released on parole." *Id.* at 171.

*Simmons* addresses very specific circumstances: (1) When the state seeks the death penalty on the grounds that the defendant will be a future danger to society; and (2) when the alternative to a death sentence is a life sentence without the possibility of parole.

> [I]f the State rests its case for imposing the death penalty at least in part on the premise that the defendant will be dangerous in the future, the fact that the alternative sentence to death is life without parole will necessarily undercut the State's argument regarding the threat the defendant poses to society. Because truthful information of parole ineligibility allows the defendant to deny or explain the showing of future dangerousness, due process plainly requires that he be allowed to bring it to the jury's attention by way of argument by defense counsel or an instruction from the court.

*Simmons*, 512 U.S. at 168-69 (internal quotation marks and citation omitted). In this case, the jury's

alternative to a death sentence was a parole-eligible life sentence.

Raby's claim has repeatedly been rejected.

[T]he Supreme Court took great pains in its opinion in *Simmons* to distinguish states such as Texas, which does not provide capital sentencing juries with an option of life without parole, from the scheme in South Carolina which required an instruction on parole eligibility . . . [T]he Fifth Circuit has repeatedly refused to extend the rule in *Simmons* beyond those situations in which a capital murder defendant is statutorily ineligible for parole.

*Green v. Johnson*, 160 F.3d 1029, 1045 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *see also*,

*Wheat*, 238 F.3d at 361-62 (5th Cir.), *cert. denied*, 532 U.S. 1070 (2001)(finding *Simmons* inapplicable

to the Texas sentencing scheme); *Soria v. Johnson*, 207 F.3d 232 (5th Cir.), *cert. denied*, 530 U.S. 1286

(2000)(finding that "reliance on *Simmons* to demonstrate that the Texas capital sentencing scheme

denied [petitioner] a fair trial is unavailing"); *Miller v. Johnson*, 200 F.3d 274, 290 (5th Cir.) ("because

Miller would have been eligible for parole under Texas law if sentenced to life, we find his reliance

on *Simmons* unavailing")(internal quotation marks and citation omitted), *cert. denied*, 531 U.S. 849

(2000); *Hughes v. Johnson*, 191 F.3d 607, 617 (5th Cir. 1999), *cert. denied*, 528 U.S. 1145 (2000);

*Muniz v. Johnson*, 132 F.3d 214, 224 (5th Cir.)(stating that a claim based on *Simmons* "has no merit

under the law in our circuit"), *cert. denied*, 523 U.S. 1113 (1998); *Montoya v. Scott*, 65 F.3d 405, 416

(5th Cir. 1995) (holding that *Simmons* claims are foreclosed by recent circuit authority rejecting an

extension of *Simmons* beyond situations in which a defendant is statutorily ineligible for parole"), *cert.*

*denied sub nom. Montoya v. Johnson*, 517 U.S. 1133 (1996); *Allridge v. Scott*, 41 F.3d 213, 222(5th

Cir. 1994)(stating that "*Simmons* is inapplicable to this case"), *cert. denied*, 514 U.S. 1108 (1995);

*Kinnamon v. Scott*, 40 F.3d 731, 733 (5th Cir.) (refusing to "extend *Simmons* beyond cases in which

the sentencing alternative to death is life without parole"), *cert. denied*, 513 U.S. 1054 (1994).

If these decisions left any doubt that *Simmons* provides no basis for the relief Raby seeks, the Supreme Court removed all such doubt in *Ramdass v. Angelone*, 530 U.S. 156 (2000). "*Simmons* applies only to instances where, as a legal matter, there is no possibility of parole if the jury decides the appropriate sentence is life in prison." *Id.* at 169.

In this case, life without parole was not a possibility. Raby faced one of two sentences: Death, or life imprisonment with the possibility of parole at a future date. Therefore, as *Ramdass* and Fifth Circuit precedent make unmistakably clear, his case does not fall within the scope of *Simmons*.

If Raby seeks an extension of *Simmons* to the Texas scheme, this court is barred from granting relief on that basis by the non-retroactivity principle of *Teague v. Lane*, 489 U.S. 288 (1989). *See Wheat*, 238 F.3d at 361 (finding any extension of *Simmons* to violate *Teague*); *Clark v. Johnson*, 227 F.3d 273, 282 (5th Cir. 2000)(same), *cert. denied*, 531 U.S. 1167 (2001); *Boyd v. Johnson*, 167 F.3d 907, 912 (5th Cir.) ("Relief based on *Simmons* is foreclosed by *Teague*."), *cert. denied*, 527 U.S. 1055 (1999). In *Teague*, the Supreme Court held that a federal court may not create new constitutional rules of criminal procedure on habeas review. *Id.* at 301. If controlling precedent did not expressly hold that the *Simmons* rule does not cover Raby's case, relief would be barred by *Teague*.

Raby also asserts that a Texas rule giving trial judges discretion to inform the jury about parole eligibility violates the equal protection clause by putting those defendants who's judges do not so inform the jury in a less favorable position that those defendants who's judges do so inform the jury. Raby did not raise this claim in the Texas courts. It is therefore unexhausted and procedurally barred. Even if it were not so barred, Raby cites no authority in support of his proposed rule barring such discretion, and it appears that there is no such authority. *Teague* prohibits this court from announcing

the rule Raby requests.

9.     Jury Voir Dire.

Raby next claims that he was not permitted to conduct jury voir dire to determine whether any jurors would not consider his mitigating evidence (Claim For Relief XI). Before trial, Raby moved for permission to ask prospective jurors whether they would consider as mitigating evidence: (1) his relative youth at the time of the crime; (2) that he was intoxicated; (3) that he suffers from a medically diagnosed mental or emotional illness; (4) that he was abused or neglected as a child; (5) that he has exhibited positive character traits such as having engaged in acts of kindness toward family members; and (6) any other relevant mitigating factor. *Raby v. State*, 970 S.W.2d 1, 3 (Tex.Crim.App. 1998). The trial court granted the motion, but stopped defense counsel's questioning during voir dire when counsel tried to commit the prospective jurors to finding specific evidence mitigating. The Texas Court of Criminal Appeals rejected this claim on direct appeal:

> [T]he law does not require a juror to consider any particular piece of evidence as mitigating: all the law requires is that a defendant be allowed to present relevant mitigating evidence and that the jury be provided a vehicle to give mitigating effect to that evidence if the jury finds it to be mitigating.

*Raby*, 970 S.W.2d at 3.

Raby relies primarily on *Morgan v. Illinois*, 504 U.S. 719 (1992). *Morgan* does not address this issue. It addresses the issue of "whether, during *voir dire* for a capital offense, a state trial court may . . . refuse inquiry into whether a potential juror would *automatically impose the death penalty upon conviction of the defendant*." *Id.* at 721 (second italics added). The trial court did not prevent Raby from inquiring whether any particular juror would automatically impose a sentence of death, but argues that the *Morgan* principle that a capital defendant is entitled to a fair and impartial jury

necessarily extends to a right to question about specific mitigating evidence. The Fifth Circuit This

extension of *Morgan* has been expressly rejected. "*Morgan* only 'involves the narrow question of

whether, in a capital case, jurors must be asked whether they would automatically impose the death

penalty upon conviction of the defendant.'" *Trevino v. Johnson*, 168 F.3d 173, 183 (5th Cir. 1999)

(quoting *United States v. Greer*, 968 F.2d 433, 437 n.7 (5th Cir. 1992)), *cert. denied*, 527 U.S. 1056

(1999). In *Trevino*, the petitioner raised a substantially identical claim to Raby's claim: Whether his

Fourteenth Amendment rights were violated when he was not permitted "to inquire whether each

venireperson . . . would consider youth as a mitigating factor." *Id.* The Fifth Circuit found that the

Texas Court of Criminal Appeals' rejection of Trevino's claim was not an unreasonable application

of *Morgan*, and that AEDPA therefore required denial of the petition. *Trevino* clearly mandates the

same result in this case.

### 10. Cumulative Error.

Finally, Raby argues that the cumulative effect of all of his claimed errors deprived him of a

fair trial. (Claim For Relief XIII). Raby never raised this claim in the state courts. Accordingly, the

claim is unexhausted and procedurally barred, and this court may not address it.

### Evidentiary Hearing

An evidentiary hearing is not required if there are "no relevant factual disputes that would

require development in order to assess the claims." *Michael Williams v. Taylor*, 529 U.S. 420, 436

(2000) ( it was "Congress' intent to avoid unneeded hearings in federal habeas corpus"). "If it appears

that an evidentiary hearing is not required, the judge shall make such disposition of the petition as

justice shall require." Rules Governing Section 2254 Cases R. 8. Each of Raby's claims can be

resolved by reference to the state court record, the submissions of the parties, and relevant legal

authority.  There is no basis on which to hold an evidentiary hearing.

## Certificate Of Appealability.

Raby has not requested a certificate of appealability (COA), but this court may determine whether he is entitled to this relief.  *See Alexander v. Johnson*, 211 F.3d 895, 898(5th Cir. 2000) ("It is perfectly lawful for district court's [sic] to deny a COA *sua sponte*.  The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued.")  A petitioner may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for a COA until the district court has denied such a request.  *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1988); *see also Hill v. Johnson*, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court should continue to review COA requests before the court of appeals does.").  COAs are granted on an issue-by-issue basis, limiting appellate review to those issues.  *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997).

A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further."  *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000).  The Supreme Court has stated that

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  The issue becomes somewhat more complicated where . . . the district court dismisses the petition based on procedural grounds.  We hold as follows: When the district court denies a habeas petition on

> procedural grounds without reaching the prisoner's underlying
> constitutional claim, a COA should issue when the prisoner shows, at
> least, that jurists of reason would find it debatable whether the petition
> states a valid claim of the denial of a constitutional right and that jurists
> of reason would find it debatable whether the district court was correct
> in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "[T]he determination of whether a COA should issue

must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid

out in 28 U.S.C. § 2254(d)." *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000), *cert. dismissed*,

531 U.S. 1134 (2001).

This court has carefully and exhaustively considered each of Raby's claims. While the issues

Raby raises are clearly important and deserving of the closest scrutiny, this court finds that each of the

claims is foreclosed by clear, binding precedent. Under such precedents, Raby has failed to make a

"substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). On those claims

dismissed on procedural grounds, jurists of reason would not find it debatable whether the petition

states valid grounds for relief and would not find it debatable whether this court is correct in its

procedural determinations. Raby is not entitled to a certificate of appealability on his claims.

LYNN N. HUGHES
UNITED STATES DISTRICT JUDGE